IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BILLY D. FRAZIER and ANGELA KEARNS, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | **4:17-CV-00160–JEG-HCA** |
| vs. | **ORDER** |
| PJ IOWA, L.C., | |
| Defendant. | |

This matter is before the Court on a Motion for Conditional Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, Collective Action Certification and Federal Rule of Civil Procedure 23 Class Certification (the Motion), filed by Plaintiffs Billy Frazier (Frazier) and Angela Kearns (Kearns) (collectively, Plaintiffs), on behalf of themselves and similarly situated employees of Defendant PJ Iowa, L.C. (PJ Iowa).  PJ Iowa opposes the Motion.  No party requested a hearing, and the Court finds no hearing necessary.  The matter is fully submitted and ready for disposition.

## I.    BACKGROUND[1]

PJ Iowa operates twenty-six Papa John's pizza restaurant franchises in Iowa, Illinois, and South Dakota.  Twenty-one of these are in Iowa, two are in Moline, Illinois, and three are in Sioux Falls, South Dakota.

---

[1] Upon a motion for conditional certification, the Court must determine whether a plaintiff has shown "some factual basis beyond the mere averments in their complaint" in support of certification.  Thompson v. Speedway SuperAmerica LLC, No. 08-CV-1107 (PJS/RLE), 2009 WL 130069, at *1 (D. Minn. Jan. 20, 2009) (quoting West v. Border Foods, Inc., Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *2 (D. Minn. July 10, 2006)).  Thus, the facts set forth in this Order are taken from the limited record provided by the parties on this Motion.  However, the Court is not required to issue findings of fact at the conditional certification stage, see, e.g., id. at *6, and the above discussion does not constitute findings of fact.

PJ Iowa employed Frazier as an hourly tipped delivery driver in Cedar Rapids, Iowa, from September 15, 2016, until April 10, 2017. PJ Iowa never paid Frazier minimum wage in Iowa, which at the relevant time was $7.25 an hour. Instead, as PJ Iowa clarifies, Frazier was paid a base cash wage of $5.25 or $5.75 per hour (wage increased on January 5, 2017), plus tips. PJ Iowa is allowed to pay this seemingly subminimum wage under the FLSA's "tip credit" policy. That is, for employees who regularly receive over $30 in tips a month, the FLSA allows employers to deduct a chosen amount from the otherwise-mandatory minimum wage. See 29 U.S.C. § 203(m), (t); U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook (DOL Handbook) § 30d00 (Nov. 17, 2016), www.dol.gov/whd/FOH/FOH_Ch30.pdf. The difference—determined by subtracting the cash wage from the mandatory minimum wage—is the "tip credit."[2] DOL Handbook § 30d06(a). The DOL Handbook states that when an employer takes a tip credit, the cash wage paid to the employee is not technically "a subminimum wage." DOL Handbook § 30d00(a). Instead "[t]ipped employees are entitled to the full . . . minimum wage, which may be comprised of both a direct or cash wage and a tip credit . . . ." Id. As is required of employers who use a "tip credit" system, PJ Iowa provided Frazier with notice of his hourly rate of pay, the amount of tip credit claimed by PJ Iowa per hour ($2.00, then $2.50, aligned with wage increase), and that Frazier had the right to retain all tips. Id. § 30d00(e)(3).

PJ Iowa employed Kearns in Marion, Iowa, as an hourly tipped delivery driver during two separate time periods: May 14, 2014, to October 16, 2014, and July 4, 2016, to February 17, 2018. Instead of paying Kearns the minimum wage, PJ Iowa paid her a base hourly wage of $5.35, $5.50, or $5.90 per hour, plus tips. PJ Iowa applied a tip credit against Kearns's minimum wage. Therefore, PJ Iowa also provided Kearns with notice of her hourly rate of pay, the amount

_____

[2] For example, if the employer pays a cash wage of $5.75 per hour, it may claim a tip credit of $1.50 ($7.25 - $5.75 = $1.50). DOL Handbook § 30d06. Additionally, the employer cannot pay a cash wage less than $2.13 per hour. Id. §§ 30d00(c), 30d06. If audited or challenged, the employer has the burden to prove that the tip credit claimed does not exceed the tips received by the employee. Id. § 30d00(b). This would make the employee's wage drop below the minimum allowed. The Court notes that although PJ Iowa uses the tip credit system, it also pays some of its tipped employees a base wage at or over $7.25 per hour.

of tip credit claimed by PJ Iowa per hour ($2.00, $2.00, and $2.50, aligned with wage increases), and Kearns's right to retain all tips.

On April 13, 2017, Frazier filed a Petition in the Iowa District Court of Polk County against PJ Iowa for violation of the FLSA, the Iowa Minimum Wage Law (IMWL), Iowa Code § 91D, and the Iowa Wage Payment Collection Law (IWPCL), Iowa Code § 91A. PJ Iowa timely removed the case to this Court based on federal question jurisdiction, 28 U.S.C. § 1331, on May 5, 2017. PJ Iowa filed a pre-answer motion to dismiss Frazier's claims on May 19, 2017, arguing Frazier violated the rule against claims-splitting.[3] This Court denied that motion on July 20, 2017. Frazier filed a Motion for Leave to File First Amended Complaint on July 19, 2017, adding Plaintiff Kearns. Upon opposition by PJ Iowa, Plaintiffs withdrew the Amended Complaint on August 14, 2017. On August 29, 2017, Frazier again filed a Motion for Leave to File First Amended Complaint, which was granted on the same day. Chief U.S. Magistrate Judge Helen C. Adams issued a scheduling order allowing for a period of limited discovery focused on collective action and class certification. In accordance with the scheduling order, the parties served initial disclosures, interrogatories, and document requests. At the conclusion of limited discovery, Plaintiffs filed this motion for conditional collective action certification and class action certification. As named representatives of the putative collective action, Plaintiffs properly filed opt-in consent forms with the Court.

Relevant to this Motion, Plaintiffs make three class-based claims.[4] Count I, which is brought under the FLSA, and Count II, which is brought under the IMWL and the IWPCL, allege that PJ Iowa improperly applied a tip credit to wages of delivery drivers who spent over

---

[3] This case in part shares a background with <u>Tegtmeier v. PJ Iowa, L.C.</u>, which was formerly before this Court and ended in a settlement approved by this Court on September 25, 2017. For order granting conditional certification in that case, see <u>Tegtmeier v. PJ Iowa, L.C.</u>, 208 F. Supp. 3d 1012 (S.D. Iowa 2016).

[4] Counts IV and V are claims brought in Frazier's name only and are not at issue in this Motion. Count IV alleges that PJ Iowa reimbursed Frazier for vehicle expenses at an unduly low rate, resulting in net wages below the federal minimum wage, in violation of the FLSA. Count V alleges the same facts as Count IV, but in violation of the IMWL.

20% of their time performing non-tipped duties or performed duties unrelated to their tipped duties.  Count III alleges that PJ Iowa's vehicle reimbursement policy resulted in net wages below the minimum wage in violation of the FLSA.

Plaintiffs now move for conditional certification of Counts I and III as an FLSA collective action of PJ Iowa delivery drivers during the applicable limitations period, including Kearns's subcollective of PJ Iowa delivery drivers who used their personal vehicles for deliveries.  Plaintiffs also seek class certification of the IMWL and the IWPCL claims—Count II—under Rule 23, as to the class of PJ Iowa delivery drivers during the applicable limitations period.

### A.  Dual Jobs Claim

Counts I and II are based on the same alleged circumstances, which are contemplated by the Department of Labor regulations on "dual jobs."  Typically, dual jobs regulations are at issue when an employee has two occupations with an employer, one requiring the performance of tipped duties and the other requiring performance of non-tipped duties.  See 29 C.F.R. § 531.56(e) ("[F]or example, where a maintenance man in a hotel also serves as a waiter.").  In these situations, the employer may apply a tip credit only for hours in which the employee performs tipped duties.  See Fast v. Applebee's Int'l., Inc., 638 F.3d 872, 876-77 (8th Cir. 2011); 29 C.F.R. § 531.56(e); DOL Handbook § 30d00(f); see also Marsh v. J. Alexander's LLC, No. 15-15791 (9th Cir. Sept. 18, 2018) (concluding, as the Eighth Circuit did in Fast, that the DOL's interpretation of 29 C.F.R. § 531.56(e) is entitled to Auer deference).[5]

---

[5] When an agency interprets its own regulations, the Court, as a general rule, defers to the agency interpretation unless it is "plainly erroneous or inconsistent with the regulation."  Auer v. Robbins, 519 U.S. 452, 461 (1997) (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)).  This type of deference, Auer deference, is appropriately applied to Department of Labor interpretations of its own regulations, where the regulations "g[i]ve specificity to a statutory scheme the Secretary [of the DOL] [i]s charged with enforcing and reflect[ ] the considerable experience and expertise the Department of Labor ha[s] acquired over time with respect to the complexities of the Fair Labor Standards Act."  Fast, 638 F.3d at 878 (alteration in original) (quoting Gonzales v. Oregon, 546 U.S. 243, 256-57, (2006)).  "Auer deference is warranted only when the language of the regulation is ambiguous."  Christensen v. Harris County, 529 U.S. 576, 588 (2000).

The regulations give employers flexibility to apply a tip credit for time spent on non-tipped duties that are incidental to the employee's tipped occupation.  DOL Handbook § 30d00(f)(2) (citing 29 C.F.R. § 531.56(e)).  This flexibility is limited by a twenty-percent rule.  That is, an employer cannot continue to take a tip credit when a tipped employee spends over 20% of his or her time performing non-tipped duties incidental to the tipped duties.  Id. § 30d00(f)(3).  Further, a tip credit cannot be applied to an employee's time spent performing duties unrelated to the tipped duties.  Id. § 30d00(f)(4).  Counts I and II are both claims relating to dual jobs in this sense.

PJ Iowa's delivery drivers spend most of their time delivering pizzas to customers.  This is a tipped occupation, for which PJ Iowa pays cash wages below the minimum wage and applies a tip credit.  Delivery drivers are generally "responsible for delivering customers' orders to the customers' specified delivery locations."  Donaldson Decl. ¶ 3 – Ex. 1 to Def.'s Opp'n, ECF No. 55-1.  PJ Iowa also employs general managers, assistant managers, and restaurant team employees, all of whom spend their working hours inside restaurant locations.  Restaurant team employees are paid at least the minimum wage, are not tipped, and are without need for a tip credit.  Each restaurant location uses a list of cleaning and miscellaneous tasks, which must be completed regularly.  Local managers assign these tasks.  Tasks can be assigned to delivery drivers when drivers are at the store between deliveries.  Management tracks employee time spent delivering ("road hours") and in the store ("store hours") through daily reports.  The daily reports do not track the specific tasks completed during store hours.

Plaintiffs allege that, prior to May 29, 2017,[6] PJ Iowa required drivers to engage in a substantial amount of non-tipped duties while paying them as if they were being tipped.  Plaintiffs allege that this practice resulted in delivery drivers failing to receive the minimum wage, in

---

[6] Both parties agree that on May 29, 2017, PJ Iowa adopted a "dual wage" compensation system under which delivery drivers are paid at least the minimum wage for any work performed in the restaurants.

violation of (1) the twenty-percent rule, and (2) the rule against applying a tip credit to work not incidental to the regularly tipped occupation.  Specifically, Plaintiffs allege that delivery drivers spent over 20% of their "working time engaged in non-tipped labor and/or performing duties not incidental to their tipped occupation," including "folding pizza boxes, washing dishes, sweeping, mopping, scrubbing the freezer, working at the cut station, working at the preparation station, answering telephone calls, cleaning bathrooms, washing walls, . . . and general maintenance," which should have been compensated by at least the minimum wage.  First Am. Compl. ¶ 15, ECF No. 29.

### B.   Vehicle Reimbursement Claim

PJ Iowa's delivery drivers use their own cars to deliver pizza to customers.  In doing so, they incur various expenses, most regularly for fuel.  Drivers must also ensure that vehicles are kept in satisfactory condition.  PJ Iowa reimburses drivers at the rate of 5% of net sales per each delivery.  Kearns argues that this reimbursement formula results in drivers' wages falling below the minimum.[7]  Because this calculation does not reflect actual mileage, and because drivers are paid less than, or close to, minimum wage, Kearns argues that the reimbursement is inadequate and results in a wage under the minimum required by law.

## II.   DISCUSSION

### A.   Standard for Conditional Certification of an FLSA Collective Action

The FLSA sets a federal minimum wage that employers must pay employees.  29 U.S.C. § 206.  If employers pay less than the amount prescribed, the FLSA allows employees to bring a "collective action" to recover for violations of the FLSA that have harmed not only themselves, but also "other employees similarly situated."  Id. § 216(b).  FLSA collective actions use an opt-

---

[7] Frazier does not take part in this claim.

in procedure, which limits party plaintiffs to those employees who give "consent in writing to become such a party" and file that consent with the court.[8] Id.

When a plaintiff seeks to certify an FLSA collective, courts in this Circuit typically proceed in two stages: first, the conditional certification or notice stage; and second, the final certification (or decertification) stage. See Tegtmeier v. PJ Iowa, L.C., 208 F. Supp. 3d 1012, 1018-19 (S.D. Iowa 2016); Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 891 (N.D. Iowa 2008) ("The two-step approach to collective action certification 'distinguishes between conditional class certification, generally made at the "notice stage," and a final class certification deter-mination made after discovery is largely completed.'" (quoting Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 577 (N.D. Iowa 2005))). The notice stage provides the Court an oppor-tunity to assess "at an early point in the litigation whether to conditionally certify the opt-in collective action." Tegtmeier, 208 F. Supp. 3d at 1018 (citing Robinson v. Tyson Foods, Inc., 254 F.R.D. 97, 99 (S.D. Iowa 2008)). If the Court conditionally certifies a class, the Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs. Saleen v. Waste Mgmt., Inc., 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).[9] Conditional certification will also, often, trigger discovery. Hussein v. Capital Bldg. Servs. Grp., Inc., 152 F. Supp. 3d 1182, 1190 (D. Minn. 2015). In both stages, the burden is on the plaintiff to establish that the members

---

[8] The opt-in process distinguishes collective actions from class actions brought pursuant to Rule 23, which use an opt-out process. See, e.g., Perrin v. Papa John's Int'l, Inc., No. 4:09CV01335AGF, 2011 WL 4089251, at *2 n.7 (E.D. Mo. Sept. 14, 2011).

[9] Before the Court in Hoffmann–La Roche was "the propriety of court-supervised notice under § 216(b) in the context of a collective action brought pursuant to the Age Discrimination in Employment Act (ADEA)." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 264 n.15 (S.D.N.Y. 1997) (discussing Hoffmann–La Roche, 493 U.S. at 169). Because the ADEA, 29 U.S.C. § 626(b), "expressly incorporates by reference the remedies and enforcement provisions of FLSA § 216(b)," which the Hoffmann–La Roche Court construed on its own terms, the Court's analysis in that case "applies with equal force to FLSA cases." Id.

are "similarly situated," Bouaphakeo, 564 F. Supp. 2d at 891-92; however, the standard toughens

as litigation progresses:

> Applying the two-part test, the Court first uses a lenient standard to determine whether similarly situated persons exist, and if appropriate, the class is conditionally certified. The second step occurs after notice, time for opting-in, and discovery have taken place. Applying a stricter standard, the Court makes a factual determination on the similarly situated question. The second inquiry is usually conducted upon a defendant's motion for decertification.

Freeman v. Wal–Mart Stores, Inc., 256 F. Supp. 2d 941, 944-45 (W.D. Ark. 2003) (citations

omitted).

At the notice stage, the main issue for the Court to determine is whether the named plain-

tiffs demonstrate that they are "similarly situated" to the proposed members of the collective.

§ 216(b). Plaintiffs "need merely provide 'some factual basis from which the court can deter-

mine if similarly situated potential plaintiffs exist.'" Robinson, 254 F.R.D. at 99 (quoting

Dietrich, 230 F.R.D. at 577). This is a lenient standard, but the plaintiff nevertheless bears the

burden, and "more than mere allegations" are required. Id. (quoting Bouaphakeo, 564 F. Supp.

2d at 892). The plaintiff can generally meet this burden by showing that "the putative class

members were together the victims of a single decision, policy, or plan." Id. at 99-100 (quoting

Bouaphakeo, 564 F. Supp. 2d at 892). The Court does not need to "make any credibility deter-

minations with respect to the evidence presented," but "some identifiable facts or legal nexus

must bind the claims so that hearing the cases together promotes judicial efficiency." Tegtmeier,

208 F. Supp. 3d at 1019 (quoting Andersen v. Wells Fargo Fin., Inc., No. 4:11–cv–00085, 2012

WL 12871958, at *3 (S.D. Iowa Feb. 6, 2012)).

Given that neither the FLSA nor the Eighth Circuit Court of Appeals define "similarly

situated" in this context, see Bouaphakeo, 564 F. Supp. 2d at 890, "the question of whether to

certify a[n] FLSA collective action lies with the discretion of the district court, and the Court

may also vary from the above analysis at its discretion." Tegtmeier, 208 F. Supp. 3d at 1019

(citing <u>Bouaphakeo</u>, 564 F. Supp. 2d at 891).  Here, the case is at the first stage and the Court

will proceed accordingly.[10]

### B.   Conditional Certification Analysis

Numerous courts, including this one, have considered—and granted—motions for FLSA

collective action certification brought by plaintiff delivery drivers against defendant pizza

delivery companies for minimum wage violations.[11]  These cases are instructive in showing the

effect of the lenient notice-stage standard for conditional collective action certification.  That is,

---

[10] Although some courts have used an intermediate standard of review when some
discovery has been completed prior to conditional certification, <u>see, e.g.</u>, <u>Kayser v. Sw. Bell Tel.
Co.</u>, 912 F. Supp. 2d 803, 812 (E.D. Mo. 2012), this Court finds that the lenient standard of
review typical of the first stage is appropriate here, <u>see</u> <u>Fast</u>, 243 F.R.D. at 363 (refusing to apply
the intermediate standard where the parties have conducted some discovery, but neither party
contended that discovery was substantially complete).  Neither party has argued that it should be
otherwise.

[11] Several other district courts have considered and granted notice-stage FLSA collective
action certification.  <u>See generally</u> <u>Young v. Rolling in the Dough, Inc.</u>, No. 17 C 7825, 2018
WL 1240480, at *2-3 (N.D. Ill. Mar. 8, 2018) (granting conditional certification on claims of
general minimum wage violations, including failure to provide notice of tip credit and dual job
violations); <u>Meetz v. Wis. Hosp. Grp. LLC</u>, No. 16-C-1313, 2017 WL 3736776, at *2-5 (E.D.
Wis. Aug. 29, 2017) (conditionally certifying collective on vehicle reimbursement claim);
<u>Tegtmeier</u>, 208 F. Supp. 3d at 1022-25 (conditionally certifying collective on inadequate vehicle
reimbursement claim and policy of requiring that employees provide driving record as condition
of employment); <u>Bellaspica v. PJPA, LLC</u>, 3 F. Supp. 3d 257, 259-60 (E.D. Pa. 2014) (condi-
tionally certifying collective actions under theories of inadequate vehicle reimbursement and
dual job violation); <u>Smith v. Pizza Hut, Inc.</u>, No. 09-CV-01632, 2012 WL 1414325, at *4-5 (D.
Colo. Apr. 21, 2012) (conditionally certifying collective on vehicle reimbursement claim);
<u>Darrow v. WKRP Mgmt., LLC</u>, No. 09-cv-1632-CMA-BNB, 2012 WL 638119, at *2-4 (D.
Colo. Feb. 28, 2012) (same); <u>Perrin</u>, No. 09CV01335, 2011 WL 1118774, at *3-5 (same); <u>Bass
v. PJComn Acquisition Corp.</u>, No. 09-cv-01614-REB-MEH, 2010 WL 3720217, at *2-3 (D.
Colo. Sept. 15, 2010) (granting motion for conditional certification of collective action for
inadequate vehicle and other employment reimbursements but denying without prejudice motion
for class action certification of state minimum wage law claims); <u>Luiken v. Domino's Pizza,
LLC</u>, No. 09–516 (DWF/AJB), 2010 WL 2545875, at *2-3 (D. Minn. June 21, 2010) (granting
motion for conditional certification of collective action for inadequate vehicle expense
reimbursement).  <u>But see</u> <u>Collins v. NPC, Int'l, Inc.</u>, No. 317CV 00312NJRRJD, 2017 WL
4803887 (S.D. Ill. Oct. 25, 2017) (denying conditional certification without prejudice while the
case was stayed pending a United States Supreme Court ruling).

"conditional certification of a representative class is generally granted."  See Campbell v. Amana Co., L.P., No. C99-75 MJM, 2001 WL 34152094, at *2 (N.D. Iowa Jan. 4, 2001).

### 1.  Dual Jobs Claim (Count I)

Plaintiffs argue that conditional certification is appropriate because PJ Iowa's delivery drivers were subject to the practice of being required to perform non-tipped duties.  Plaintiffs allege that this practice resulted in tipped employees spending more than 20% of work time on non-tipped duties, in violation of the twenty-percent rule.  Plaintiffs also allege that this practice resulted in tipped employees performing non-tipped duties not incidental to their tipped occupation.

In support of their allegations, Plaintiffs provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist."  See Tegtmeier, 208 F. Supp. 3d at 1019-20 (quoting Robinson, 254 F.R.D. at 99).  Plaintiffs submitted declarations, attesting they often spent more than 20% of their shift performing duties for which they were not tipped and which they believe were not related to their tipped occupations.  In addition, Plaintiffs submitted a PJ Iowa delivery drivers' job description template, which clearly states that delivery drivers should be prepared to perform various pre- and post-delivery duties including "other assigned workstation duties" and "closing duties, including cleaning."  Pls.' App. 7-8, ECF No. 44.  Further, Plaintiffs submitted photographs provided by PJ Iowa, displaying "delivery driver job duties documents."  Id. at 10-67.  The photographs support the allegation that delivery drivers spent time completing cleaning and other non-tipped duties while in the restaurant.[12]  Finally, Plaintiffs allege, and PJ Iowa confirms, that prior to May 29, 2017, delivery drivers were paid at the same rate for road hours as they were for store hours.

---

[12] For example, one photograph is of a whiteboard, which displays a list of Drivers, and next to each driver's redacted name is a duty: Trash, Trays, Pop, Cheese, Prep, and Fold Boxes. Other photographs list Drivers or Driver Staff next to Side Work, which included Day dishes, Trash/Boxes, Fold Boxes, Closing dishes, Closing sweep/mop, Trash, and Crumb Trays.

PJ Iowa resists, arguing that its delivery drivers are not similarly situated because each location has a general manager who creates schedules and assigns job duties independently.  "To be similarly situated, however, class members need not be identically situated."  Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 363 (W.D. Mo. 2007) (citing Hyman v. First Union Corp., 982 F. Supp. 1, 7 (D.D.C. 1997)).  To fulfill the "similarly situated" requirement, Plaintiffs need make only a modest factual showing.  Id. at 363-64.  In this case, PJ Iowa asserts that managers at each location maintain and assign "sidework" to restaurant staff and delivery drivers in order "to maximize efficiency and speed of preparation."  Donaldson Decl. ¶ 5 – Ex. 1 to Def.'s Opp'n, ECF No. 55-1.  Even so, the use of different management practices at each PJ Iowa location does not undermine Plaintiffs' showing at this time.  See Judkins v. Southerncare, Inc., 74 F. Supp. 3d 1007, 1011 (S.D. Iowa 2015) (declining, even at the decertification stage, to be "persuaded that the various work locations and differing supervisors of Plaintiffs compel[led] decertification"); Fast, 243 F.R.D. at 363 (rejecting, based on limited evidence available at conditional certification stage, defendant's argument that its servers were "not similarly situated because each restaurant's manager schedules its employees and assigns them job duties independently").  Here, Plaintiffs have submitted sufficient evidence to show that PJ Iowa maintained a practice that makes tipped delivery drivers similarly situated as to the claim that they performed non-tipped tasks in restaurant locations.

PJ Iowa asks that this Court to adopt the analysis applied in Saleen v. Waste Management, Inc., Civ. No. 08-4959 (PJS/JJK), 2009 WL 1664451 (D. Minn. June 15, 2009).  Plaintiffs argue that Saleen is inapplicable.  In Saleen, drivers of trash-collection vehicles moved for conditional certification of an FLSA collective action, alleging that Waste Management, Inc. (WMI) violated the FLSA by failing to pay overtime wages.  Id. at *1.  The plaintiffs alleged that there was an "automatic-deduction pay policy" for required 30-minute lunch breaks.  Id. at *1-2.  Indeed, WMI had a written policy requiring the 30-minute break and providing procedures for exemption.  Id.  However, the plaintiffs alleged that they were rarely if ever allowed to take the entire

30-minute break and that WMI often did not compensate drivers for working through lunch.  Id. at *2.  The district court denied certification, concluding that "[p]laintiffs' offer of proof in support of their motion appear[ed] to advance the theory that WMI's enforcement of the automatic-deduction policy created a policy-to-violate-the-policy."  Id. at *5.  That rationale is not applicable in this case.

Here, Plaintiffs do not make the argument that there is a "policy-to-violate-the-policy." Instead, Plaintiffs argue that the practice of using tipped drivers for non-tipped duties violates the FLSA in its *implementation*, not on the face of a particular policy.  See Hussein, 152 F. Supp. 3d at 1192 (distinguishing cases in which plaintiffs allege the unlawfulness of written policy from cases in which plaintiffs allege that uncodified practices or conduct violate the law); Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 830 (N.D. Ohio 2011) (distinguishing Saleen based on the difference between an argument based on *implementation* of a policy and one based on *enforcement* of a policy-to-violate-the-policy).

Further, Saleen is distinguishable based on the amount of evidence available to the court. In Saleen, the district court analyzed 112 declarations of opt-in plaintiffs.  Saleen, 2009 WL 1664451, at *2.  The court found the content of those declarations "too varied for the Court to conclude that there [wa]s [the] single decision, policy, or plan" necessary for conditional certi-fication.  Id. at *5.  Here, Plaintiffs have had no opportunity to collect and present the same amount of evidence.  At this stage of discovery, the two declarations, in addition to the other evidence, are sufficient to support the finding that Plaintiffs are similarly situated.  See Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 816 (W.D. Mo. 2005) (noting that in a prior case, the court granted conditional certification based on the single affidavit of one former employee); see also Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (noting that plaintiffs have a minimal burden of showing they are similarly situated to the potential class members).

PJ Iowa argues further that the "cookie cutter" declarations fail to support conditional certification.  By this, PJ Iowa refers to the fact that the declarations include largely identical descriptions of Plaintiffs' work environments.  However, whether this decreases the credibility of Plaintiffs' argument is not an appropriate inquiry at this time.  "[S]igned declarations or affidavits provide appropriate support for motions to conditionally certify a class." Stouder v. Turblex, Inc., No. 10-3069-CV-S-DW, 2010 WL 11619552, at *2 (W.D. Mo. Aug. 31, 2010); Robertson v. LTS Mgmt. Servs. LLC, 642 F. Supp. 2d 922, 926 (W.D. Mo. 2008) (rejecting the defendant's argument that five affidavits did not prove the plaintiffs were similarly situated because they were all "conclusory and contain[ed] the same information").

PJ Iowa similarly argues that Plaintiffs should not be allowed to extrapolate from their own limited personal knowledge to the circumstances of all PJ Iowa delivery drivers.  However, Plaintiffs' request typifies those made by named representatives for conditional certification of a collective action:  They provide evidence of their own situation, provide evidence to support their belief that they are similarly situated to others, and then ask the Court to extrapolate.  Of course, that is exactly the type of extension that the FLSA's broad remedial powers allow through the collective action.  See 29 U.S.C. § 216(b).  Plaintiffs here provide evidence based on their personal knowledge.  As hourly employees of a regional corporation, their knowledge is understandably limited.  Its limited scope makes it no less persuasive to this Court, at this time.  At the final certification phase, it will be appropriate for this Court to determine whether the named Plaintiffs were correct in their beliefs and are still able to maintain that they are similarly situated to other members of the class.[13]

---

[13] This argument is related to the issue of which burden applies at this phase, which Plaintiffs raise in their Reply Brief.  Plaintiffs argue that the Mt. Clemens burden-shifting rule should apply here, and that Plaintiffs have met their burden under the rule.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), superseded by statute on other grounds, Portal–to–Portal Act of 1947, Pub. L. No. 80–49, 61 Stat. 84.  This argument is not yet appropriate for resolution by this Court.  For now, the only applicable burden for Plaintiffs is that which this Court has already stated applies in the conditional certification stage.  "Plaintiffs need not show

PJ Iowa also argues that its prior practice of compensating drivers at the same rate for store hours and road hours was not "facially illegal."  This argument does not preclude conditional certification.  Fast, 243 F.R.D. at 364 (finding that Applebee's arguments as to validity of plaintiffs' claims did not preclude conditional certification); Hoffmann, 982 F. Supp. at 262 (stating that, at the notice stage, the court "need not evaluate the merits of plaintiffs' claims" to be able to determine that a group is similarly situated).  "A plaintiff need not marshal facts in support of the merits of its claims." Tegtmeier, 208 F. Supp. 3d at 1022.  While Plaintiffs do need to make a modest factual showing, it need only show that other potential plaintiffs are similarly situated with respect to the alleged FLSA violation.  Here, the Court finds that conditional certification is warranted.  Notice to other potential plaintiffs who were employed prior to May 29, 2017, is appropriate.

### 2.  Vehicle Reimbursement Claim (Count III)

Kearns also seeks conditional certification for her claim that PJ Iowa's vehicle reimbursement policy reduces delivery drivers' wages to below minimum wage.  Kearns argues the policy under-reimburses delivery drivers for actual driving expenses, resulting in PJ Iowa failing to ensure that delivery drivers make at least $7.25 per hour.  Kearns argues that conditional certification is appropriate because she has shown that PJ Iowa's delivery drivers were subject to the uniform reimbursement policy.

In support, Kearns provided "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." See Tegtmeier, 208 F. Supp. 3d at 1019-20 (quoting Robinson, 254 F.R.D. at 99).  Specifically, Kearns provided PJ Iowa's confirmation that, "[a]t

---

that members of the conditionally certified class are actually similarly situated.  That determination will be made after the close of discovery."  Fast, 243 F.R.D. at 363.  For example, in Fast v. Applebee's Int'l, Inc., the court did not deal with the Mt. Clemens argument at the conditional certification stage, but at summary judgment stage.  See Fast v. Applebee's Int'l, Inc., No. 06–4146–CV–C–NKL, 2010 WL 816639, at *3, *8-9 (W.D. Mo. Mar. 4, 2010) (denying employer's motion for summary judgment), aff'd, 638 F.3d 872 (8th Cir. 2011).

each of Defendant's stores, delivery drivers are reimbursed for their automobile expenses at a rate of 5% of the sale of each delivery." Def.'s Resp. to Pls.' 3d Interrogs. – Pls.' App 75, ECF No. 44.

In opposition, PJ Iowa argues that this evidence is insufficient to show the reimbursement policy violates the FLSA. That, however, is not the question at this stage. "A plaintiff need not marshal facts in support of the merits of its claims." Tegtmeier, 208 F. Supp. 3d at 1022. Because Kearns must provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist," Dietrich, 230 F.R.D. at 576-77 (quoting Campbell, 2001 WL 34152094, at *2), PJ Iowa's confirmation that it has a reimbursement policy that is applicable to *all* delivery drivers is quintessentially sufficient. "Conditional certification in the first step 'requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" Bouaphakeo, 564 F. Supp. 2d at 892 (quoting Young v. Cerner Corp., 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007)).

PJ Iowa also argues that determining whether the reimbursement policy violates the FLSA requires individualized inquiry. But this Court has already determined that "the inherent variability of PJ Iowa's reimbursement formula" does not defeat conditional certification, at least where Kearns has shown that the same reimbursement policy applies to all PJ Iowa drivers. Tegtmeier, 208 F. Supp. 3d at 1021. Here, again, the Court finds that conditional certification is warranted. Notice to other potential plaintiffs is appropriate.

## C.  Standard for Class Action Certification

Plaintiffs also seek class certification of their dual jobs claim under Iowa law. The factual background is the same as it was for Count I. However, Plaintiffs' request is analyzed under Rule 23.

Class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). Rule 23 ensures that the exception is justified and that "the named plaintiffs are appropriate

representatives of the class whose claims they wish to litigate." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 349 (2011).  District courts have broad discretion in determining whether a class should be certified under Rule 23.  <u>Smith v. ConocoPhillips Pipe Line Co.</u>, 801 F.3d 921, 925 (8th Cir. 2015).  A district court "must conduct a 'rigorous analysis' to determine whether the prerequisites for a class action under Rule 23(a) are satisfied." <u>Rattray v. Woodbury Cty., IA</u>, 614 F.3d 831, 835 (8th Cir. 2010) (quoting <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982)).  "Though class certification is not the time to address the merits of the parties' claims and defenses, the 'rigorous analysis' under Rule 23 must involve consideration of what the parties must prove." <u>Elizabeth M. v. Montenez</u>, 458 F.3d 779, 786 (8th Cir. 2006).  Therefore, analysis may "entail some overlap with the merits." <u>Dukes</u>, 564 U.S. at 351.

### D.   Class Action Certification Analysis (Count II)

To maintain a class action pursuant to Rule 23(a), the plaintiff must establish four pre-requisites:  numerosity, commonality, typicality, and adequacy.  <u>See</u> Fed. R. Civ. P. 23(a).  If these requirements are met, the party moving for class certification must also fit into one category listed in Rule 23(b).  <u>See</u> Fed. R. Civ. P. 23(b).

#### 1.   Rule 23(a)

The party seeking class certification bears the burden of meeting the Rule 23(a) require-ments, which are:

   (1)  the class is so numerous that joinder of all members is impracticable;
   (2)  there are questions of law or fact common to the class;
   (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
   (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "A complaint's mere recital of questions that happen to be shared by class members is 'not sufficient to obtain class certification.'" <u>Mielo v. Steak 'n Shake Operations, Inc.</u>, 897 F.3d 467, 487 (3d Cir. 2018) (quoting <u>Dukes</u>, 564 U.S. at 350).  PJ Iowa does not concede that Plaintiffs have met any of the above requirements.

16

### a. Numerosity

The numerosity inquiry requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." Paxton v. Union Nat'l Bank, 688 F.2d 552, 559-60 (8th Cir. 1982).

The parties do not dispute the size of the potential class.  PJ Iowa's interrogatory responses indicate that PJ Iowa employed 1250 delivery drivers in the last three years.[14]  This differs slightly, though not materially, from the figures PJ Iowa provided in its brief in resistance to this Motion.[15]  Plaintiffs admit that the class should be limited to delivery drivers who began working for PJ Iowa prior to May 2017 when PJ Iowa switched to a "dual jobs" system.  The Court agrees.  Since the proposed class is based on the claim that delivery drivers *should* have been paid a dual wage, those drivers who *were* paid the dual wage from the start of employment will not be eligible to be in the class.  Since this claim is brought under Iowa law, it is also limited geographically to only those drivers employed in PJ Iowa's locations in the state of Iowa. Taking all of this into consideration, the Court finds that Plaintiffs have shown the class would likely include hundreds of current and former delivery drivers.

Size of the class not necessarily being dispositive, the parties disagree as to whether joinder is practicable.  Plaintiffs argue that joinder is impracticable because the cost of bringing each

---

[14] The Court notes that the relevant time period under Iowa law is two years.

[15] PJ Iowa stated that

[i]n the past three years, PJ Iowa has employed approximately 1,557 Delivery Drivers at its 26 locations.  Between April 23, 2015 and the present, PJ Iowa has employed approximately 1,285 Delivery Drivers at its 21 locations within the state of Iowa.  Of these Delivery Drivers who worked in the state of Iowa, 557 (or approximately 43%) were employed by the company for less than 90 calendar days. Additionally, out of all of the 1,557 Drivers who have worked for the company in the last three years, 492 (or approximately 31%) have been hired since May 29, 2017, and thus have always been paid the "dual job" minimum cash hourly rate of $7.25 for any work they performed in the restaurants.

Def.'s Opp'n 3-4, ECF No. 55.

claim outweighs its benefit, thus making joinder impracticable given the financial resources of putative class members.  PJ Iowa argues that the potential class members are current or former employees whose addresses are readily identifiable, and therefore joinder is practicable.

A court can consider the financial resources of potential class members.  Gries v. Standard Ready Mix Concrete, L.L.C., 252 F.R.D. 479, 486 (N.D. Iowa 2008).  Where, as here, no evidence supports the argument that potential class members lack financial resources, courts can make the assumption, or not.  Compare Jackson v. Foley, 156 F.R.D. 538, 542 (E.D.N.Y. 1994) ("It is likely that the majority of the class members are from extremely low income households, thereby greatly decreasing their ability to bring individual suits."), with Gries, 252 F.R.D. at 487 ("The financial resources of the individuals in this group is not disclosed in the record before the court and the court is unwilling to make the assumption that this class of individuals lacks the financial resources to institute individual lawsuits.").  This Court declines to make the assumption here.  A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Califano, 442 U.S. at 700-01.  Class certification requires that "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  Falcon, 457 U.S. at 161 (highlighting "the potential unfairness to the class members" if a class is certified inappropriately or overbroadly based on presumed, not actual, conformance with the requirements of Rule 23).

Given that PJ Iowa has confirmed the number of potential class members is in the hundreds, this Court is satisfied that the class is sufficiently numerous to make joinder impracticable.  "In establishing numerosity, a plaintiff does not need to show the exact number of potential class members, only that the number is such that joinder is extremely difficult or inconvenient."  Walls v. Sagamore Ins. Co., 274 F.R.D. 243, 253 (W.D. Ark. 2011).  PJ Iowa's argument that readily available contact information makes the joinder of hundreds practicable is not persuasive.  Accordingly, Plaintiffs satisfy the numerosity requirement.

### b.  Commonality

"Rule 23(a)(2) requires that there be common questions of law or fact among the members of the class." Paxton, 688 F.2d at 561 (citing Fed. R. Civ. P. 23(a)(2)).  This requirement does not mandate commonality on every issue.  In re Teflon Prod. Liab. Litig., 254 F.R.D. 354, 364 (S.D. Iowa 2008) (citing Paxton, 688 F.2d at 561).  "Rather, the issues linking the class members must be 'substantially related' to resolution of the case." Id. (citing Paxton, 688 F.2d at 561).  "A proponent of class certification cannot show commonality by demonstrating merely that the class members have all suffered a violation of the same provision of law." Bennett v. Nucor Corp., 656 F.3d 802, 814 (8th Cir. 2011) (citing Dukes, 564 U.S. at 349-50).  Instead, claims must depend on a "common contention" that must "be 'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Id. (quoting Dukes, 564 U.S. at 350).

In support of a finding of commonality, Plaintiffs state that Iowa minimum wage law is the same for each class member and that the same arguments Plaintiffs raised to support the finding of "similarly situated" class members (under the FLSA) apply to the commonality requirement.  Further, Plaintiffs refer to "common questions" raised in their pleadings.  PJ Iowa challenges the sufficiency of these arguments and argues that Plaintiffs have failed to meet their burden to show commonality.

This Court is not persuaded that Plaintiffs' minimal showing satisfies their burden under Rule 23(a)(2).  While Plaintiffs are correct that Iowa's minimum wage law is applicable to all proposed class members, this fact does not ensure satisfaction of the commonality requirement. See Bennett, 656 F.3d at 814 (citing Dukes, 564 U.S. at 349-50) (requiring plaintiffs demonstrate more than that class members have "suffered a violation of the same provision of law").  Further, the same arguments and evidence Plaintiffs raised to support the FLSA collective actions are unavailing under Rule 23.  "An examination of whether a class should be certified under Rule 23

follows much different standards than an examination of whether a collective action should be conditionally certified under the FLSA." Davis, 408 F. Supp. 2d at 818; see also Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) ("[C]ourts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Federal Rule of Civil Procedure 23 . . . ."); Andersen, 2012 WL 12871958, at *3 (declining to apply Rule 23 standards to an FLSA collective action).  Commonality is not the same as being "similarly situated."  While not restating Plaintiffs' arguments here, this Court finds them unavailing under the more stringent standards of Rule 23.

Plaintiffs recite the common questions of their First Amended Complaint and argue they are the type of questions that prove commonality.  This recitation, however, will not suffice. The Rule 23(a)(2) commonality requirement language is "easy to misread," Dukes, 564 U.S. at 349, since competently pled class actions will always raise seemingly common questions.  Id. Reciting the questions pled in the complaint, however, "is not sufficient to obtain class certification."  Id.  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* . . . common questions of law or fact, etc."  Id. at 350.

> What matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Id. (alteration in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Plaintiffs' demonstration at this stage is inadequate under Rule 23 to show that there is a common answer to a common question that will lead to a resolution of this litigation.  In support of their showing for commonality, Plaintiffs state that their First Amended Complaint "identifies several common factual and legal issues."  Pls.' Br. 21, ECF No. 49.  The Complaint states that common questions include, but are not limited to:

1. Whether Defendant should have paid Plaintiffs and the putative collective and class as regular, instead of tipped, employees for purposes of United States and Iowa minimum wage law during those times when Plaintiffs and the putative collective and class engaged in non-tipped labor.

2. Whether Defendant is liable to Plaintiffs and the putative collective or class for liquidated damages.

First Am. Compl. ¶ 19, ECF No. 29.

Question one, given the broadest reading, goes to Plaintiffs' claim that PJ Iowa required Plaintiffs to spend more than 20% of their time engaged in duties that did not produce tips and spend time completing tasks not related to their tipped occupation.  The merits of this claim cannot be resolved without determining, at least:  (1) "which specific duties are subject to the 20 percent limit for related duties in [the delivery driver] occupation," Fast, 638 F.3d at 881; (2) "which duties are the tip-producing part of the [delivery driver's] tipped occupation itself," id.; (3) which duties were actually performed by class members; (4) whether, and how, PJ Iowa required the performance of non-tipped duties; and (5) how much time delivery drivers spent performing unrelated *and* related non-tipped duties.  While this Court may be able to define which duties are related to the tip-producing part of the occupation,[16] queries (3)–(5) cannot be resolved with common evidence.  "[T]he court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class."  Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005).  Here, even if one delivery driver provides testimony establishing that her specific manager required her to perform certain sidework for some amount of time per

---

[16] "[I]t is for the Court to decide what duties comprise the occupation of a server or bartender.  What duties were actually performed by class members is a question of fact." Fast, 2010 WL 816639, at *3 n.3.  On interlocutory appeal, the Eighth Circuit found that determining to which duties the twenty-percent rule applied was beyond the scope of the court's review.  Fast, 638 F.3d at 881.

day, Plaintiffs have offered no meaningful evidence to show that this testimony can be representative evidence applicable to the class as a whole. This Court cannot conclude that "common evidence could suffice to make out a prima facie case for the class." Id.

Here, Plaintiffs produce limited evidence, which—though it was sufficient for purposes of FLSA conditional certification—does not meet the higher standards under Rule 23. The job duty documents, when analyzed as support for commonality, show local discretion and individual preferences of restaurant managers, rather than a common policy by PJ Iowa to use delivery drivers for non-tipped duties in the restaurants. Notably, Plaintiffs are unable to assert that the same supervisor, or same common set of directives caused them to spend over 20% of their time doing non-tipped duties. Instead, the two appended declarations assert nothing in detail and include only weak anecdotal evidence. Anecdotes of illegal conduct are not sufficient to establish a company-wide practice, especially where the proposed class members are spread out across twenty-one stores. See Dukes, 564 U.S. at 358 (finding that even if the 120 affidavits reporting experiences of discrimination were true, they would not demonstrate a company-wide policy of discrimination, as was necessary to certify the class); see also Callari v. Blackman Plumbing Supply, Inc., 307 F.R.D. 67, 76 (E.D.N.Y. 2015) (applying the same analysis from Dukes in an unpaid overtime compensation case and concluding plaintiff failed to demonstrate a company-wide policy of classifying inside sales persons the same as assistant branch managers, thereby making them similarly exempt from overtime compensation).

What the record *does* support is a finding that local managers had discretion in assigning sidework to delivery drivers. This undermines Plaintiffs' argument for commonality. In Dukes, Wal–Mart appealed the certification of a class of female employees who sought damages under Title VII for discriminatory promotion practices. Dukes, 564 U.S. at 346. Wal–Mart generally left pay and promotion decisions to the discretion of local managers. Id. at 343. Plaintiffs did not identify any "common mode of exercising discretion that pervade[d] the entire company."

Id. at 356.  Therefore, the Court concluded that "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's."  Id. at 355-56.

Here, as in Dukes,

[t]he only corporate policy that the plaintiffs' evidence convincingly establishes is [PJ Iowa's] "policy" of allowing discretion by local supervisors over employment matters.  On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices.

Id. at 355.  Courts have applied Dukes in wage and hour cases, "finding that giving individual supervisors discretion to apply policies in a manner best suited to their department or unit is just the opposite of a system-wide practice that would provide the commonality needed for class action."  Hinterberger v. Catholic Health Sys., 299 F.R.D. 22, 51 (W.D.N.Y. 2014); see also White v. 14051 Manchester Inc., 301 F.R.D. 368, 382 (E.D. Mo. 2014) (finding that plaintiffs had shown neither commonality nor predominance in a tip-sharing case because evidence showed that "dissimilar rules seem to have applied to employees at the same store, depending on factors such as who was working (in particular which manager), the amount the server/bartender earned, and the amount of assistance received").  For all of these reasons, question one, including its related inquiries, is not a common question with a common answer that will lead to a resolution of this litigation.

Question two asks whether PJ Iowa is liable to Plaintiffs and the putative class for liquidated damages.  This goes to the issue of available remedies.  Under the IWPCL, successful plaintiffs may recover "unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses."  Iowa Code § 91A.8.  Additionally, liquidated damages—generally limited to "the amount of the unpaid wages," id. § 91A.2(6)—are available "[w]hen it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3," id. § 91A.8.  "While the question of intent is a question of fact properly left to the jury, the question of whether [the] claim satisfies the statutory requirements for liquidated damages involves interpreting the IWPCL . . . . [which]

is always a question of law, as are questions of contract interpretation." <u>Kaufmann v. Siemens</u> <u>Med. Sols. USA, Inc.</u>, 638 F.3d 840, 846 (8th Cir. 2011) (citations omitted).  Assuming without deciding the legal question that Plaintiffs are even entitled to liquidated damages under the IWPCL, Plaintiffs have offered no indication that they will be able to provide common evidence to show the necessary intent to support the award of liquidated damages under § 91A.8.  <u>See</u> <u>Dallenbach v. MAPCO Gas Prod., Inc.</u>, 459 N.W.2d 483, 489 (Iowa 1990) (noting that under § 91A.8, only *intentional* violation of section 91A.3 subjects an employer to liability liquidated damages" (emphasis added)).  Plaintiffs have failed to allege common evidence among putative class members to make a prima facie showing of commonality.  <u>See</u> <u>Blades</u>, 400 F.3d at 566. Here, even if one delivery driver provides testimony establishing that PJ Iowa intentionally failed to pay him or her the applicable wages, this testimony will only answer an individual question because of the individualized nature of the circumstances in this case.  For these reasons, question two, including its related inquiries, is not a common question with a common answer that will lead to a resolution of this litigation.  Commonality is not satisfied in this case.  <u>See</u> <u>Callari</u>, 307 F.R.D. at 76-77 (reasoning the court would be required to make individual deter-minations with respect to each class member as to whether the employee worked over forty hours per week, and therefore the plaintiffs failed to satisfy the commonality requirement).  The Court finds insufficient support for a finding of commonality.

### c.  Typicality

To satisfy the typicality requirement, the proponent of certification must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is generally established by a showing that the claims of all proposed members of the class "arise from a single event or share the same legal theory." <u>In re Teflon</u>, 254 F.R.D. at 364 (citing <u>Paxton</u>, 688 F.2d at 561-62).  As long as the class shares a legal theory, "slight differences in fact will not defeat certification."  <u>Id.</u> (citing <u>Alpern v.</u>

UtiliCorp United, Inc., 84 F. 3d 1525, 1540 (8th Cir. 1996).  However, "[t]he presence of a com-
mon legal theory does not establish typicality when proof of a violation requires individualized
inquiry."  Elizabeth M., 458 F.3d at 787; see also In re Principal U.S. Prop. Account ERISA
Litig., No. 4:10-CV-00198-JEG, 2013 WL 7218827, at *32 (S.D. Iowa Sept. 30, 2013) (same).

Plaintiffs contend that Frazier and Kearns bring claims that are typical of the claims of the
proposed class.  In support, they present the same arguments that they raised under commonality.
The Court, once again, finds these arguments to be lacking.  As stated above, anecdotes of illegal
conduct are not sufficient to establish a company-wide practice, especially where the proposed
class members are spread out across twenty-one stores.  Dukes, 564 U.S. at 355-56 ("[D]emon-
strating the invalidity of one manager's use of discretion will do nothing to demonstrate the
invalidity of another's.").  Frazier and Kearns were both unable to provide any specificity about
the working conditions at PJ Iowa locations other than their own.  Rather than providing substan-
tive testimony about the knowledge they did have, Plaintiffs' declarations were conclusory and
vague.  Given the lack of representative testimony, the Court finds insufficient support for a
finding of typicality.

### d.  Adequacy

The fourth requirement under Rule 23(a) is that "the representative parties will fairly and
adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  For these purposes,
adequacy requires both that class counsel be "qualified, experienced, and generally able to
conduct the proposed litigation," and that the named plaintiffs not have interests "antagonistic to
those of the class."  Maxwell v. Tyson Foods, Inc., No. 1:08CV00017-JAJ-TJS, 2012 WL
12541110, at *8 (S.D. Iowa July 19, 2012) (quoting U.S. Fid. & Guar. Co. v. Lord, 585 F.2d
860, 873 (8th Cir. 1978)).  Here, PJ Iowa takes no issue with the adequacy of class counsel,
instead arguing that named Plaintiffs are "highly suspect" for seeming to lack information about
the class they hope to represent.  Plaintiffs appear to misread PJ Iowa's argument as an attack
on counsel.  The Court does not interpret it this way.  The Court recognizes that the putative

class's counsel has experience in wage and hour cases and complex litigation.  The Court finds

that counsel are able to adequately represent the class.

While not disputing adequacy of counsel, PJ Iowa does dispute Plaintiffs' adequacy as the

class representatives.  PJ Iowa argues that Frazier and Kearns "appear to rely solely on their

individual experiences and the documents or information provided to them by counsel during

the course of this litigation."  Def.'s Opp'n 27, ECF No. 55.  In reply, Plaintiffs argue that class

representatives are "not required to possess a high level of knowledge about the case."  Pls.'

Reply 16, ECF No. 59.  Plaintiffs cite various out-of-circuit cases to support their argument, but

they need not look so far.  In Maxwell, the court faced similar challenges to a single class repre-

sentative whose experience limited her knowledge to a few positions she held during only a

portion of the period that fell within the applicable statute of limitations.  Maxwell, 2012 WL

12541110, at *9.  Despite her lack of information about the rest of her class, the court found

plaintiff's interests to be not antagonistic to those of the class and adequately aligned.  There is

no indication that Plaintiffs here have interests antagonistic to the class.  Plaintiffs have demon-

strated a willingness to pursue the interests of the class through counsel and share the class's

interest in seeking wages due.  Adequacy of representation is satisfied in this case.

Plaintiffs fail to meet their burden under Rule 23(a).  Because the Court has found that

Plaintiffs have not met the threshold requirements of Rule 23(a), the Court need not discuss the

Rule 23(b) requirements.[17]  Plaintiffs' motion as to Rule 23 certification of IMWL and IWPCL

class action claim asserted in Count II must be denied.

---

[17] There is similarly no need for the Court to consider the two implicit factors prerequisites: whether an identifiable class exists and whether the named class representatives are members of the class.  See In re Teflon, 254 F.R.D. at 360.

**E.   Notice to Potential Plaintiffs in the FLSA Collective Actions[18]**

Plaintiffs request the Court approve the proposed Notice of Collective Action Lawsuit (the proposed Notice) and Opt-in Consent Form (Consent Form), as appended to the motion for conditional certification.  In appropriate cases, such as the present, district courts have discretion in facilitating notice to potential plaintiffs in FLSA collective actions.  Hoffmann–La Roche, 493 U.S. at 169.  The details of what should be included in such a court-facilitated notice is also left to the broad discretion of a district court.  See id. at 170.

The proposed Notice, which is written in Times New Roman 12-point font, contains eight sections:  Introduction, Description of the Lawsuit, Your Right to Participate in this Suit, Who Can Join, Effect of Joining this Suit, No Legal Effect in Not Joining this Suit, No Retaliation Permitted, and Further Information.  Defendant objects to the font, format, and location of the disclaimer contained in the last paragraph of the second section, on page two of the proposed Notice.  The contested paragraph, which is written in the same Times New Roman font used in the body of the Notice, states:

> The United States District Court for the Southern District of Iowa has made no determination and takes no position on the merits of the plaintiffs' claims or any other potential claims by other delivery drivers employed by the PJ Iowa, L.C.  There is no assurance at this time that any relief will be granted, nor if granted, the nature and amount of relief.

Proposed Collective Action Lawsuit Notice 2, Pls.' App. 88, ECF No. 44.  PJ Iowa asserts that this language should be bold or otherwise made prominent.  Because the Court "must scrupulously avoid endorsing or appearing to endorse the merits of the underlying claim," Martinez v. Cargill Meat Sols., 265 F.R.D. 490, 499 (D. Neb. 2009), making the disclaimer language more

---

[18] PJ Iowa requests they be able to provide the Court further briefing regarding the notice.  PJ Iowa's request was premised on reducing confusion should the Court certify both the collective action and the class action.  That concern having been eliminated, the Court finds further briefing unnecessary.

prominent avoids the appearance of endorsement.  The disclaimer language shall stay in its
current location, and the typeface will be made bold.

PJ Iowa also objects to the absence of language informing potential plaintiffs of the pos-
sible costs they might incur as members of the collective action.  However, the proposed Notice
already states:  "if the lawsuit is unsuccessful, the plaintiffs' attorneys will not seek reimburse-
ment of any advanced expenses and will pay all court costs that may be assessed against you and
the other members of this collective action."  Proposed Collective Action Lawsuit Notice 3, Pls.'
App. 89, ECF No. 44.  Because this language clarifies that costs may be assessed and how they
will be distributed, that is, not to the plaintiffs, any additional language would only serve the
purpose of "chilling potential plaintiffs' participation in this lawsuit."  Williams v. U.S. Bank
Nat'l Ass'n, 290 F.R.D. 600, 613 (E.D. Cal. 2013); see also Littlefield v. Dealer Warranty
Servs., LLC, 679 F. Supp. 2d 1014, 1019 (E.D. Mo. 2010) ("Because this notice might
discourage plaintiffs from joining the litigation, the request is denied."); Martinez, 265 F.R.D. at
500 (rejecting the addition of language warning potential plaintiffs they may be liable for defense
costs because "it is not clear whether prevailing defendants can be awarded defense costs from
plaintiffs seeking recovery under the FLSA, and such a notice may discourage plaintiffs from
joining the litigation").  PJ Iowa's request for potential defense cost liability language is
therefore denied.

PJ Iowa's third objection is that the Consent Form automatically designates counsel.  PJ
Iowa argues that the consent form should either allow plaintiffs to designate their own counsel,
or include no counsel designation.  The proposed Notice informs recipients they "are free to hire
an attorney of your choosing, but you may have to pay that lawyer, and you will have to file your
own separate lawsuit."  Proposed Collective Action Lawsuit Notice 3, Pls.' App. 89, ECF No.
44.  Potential plaintiffs will receive the Consent Form together with the Notice, and therefore, the
Court finds that the language of the Notice is sufficient to inform potential plaintiffs of their right

to hire separate counsel.  This Court previously authorized collective action consent forms and notices with similar language.  See Ex. 36 to Mot. To Cert. Class at 1, Tegtmeier, 208 F. Supp. 3d at 1012, ECF No. 38-39; Putman v. Galaxy 1 Mktg., Inc., No. 3:10-cv-00072, 276 F.R.D 264 (S.D. Iowa 2011), Mot. Issue Notice Consent Form 5 – Ex. A, ECF No. 57-2.

PJ Iowa also argues that potential plaintiffs should be advised they have the option of submitting their forms to this Court instead of to counsel.  This Court sees no reason to alter the standard practice of instructing potential plaintiffs to send their consent forms to Plaintiffs' counsel.  PJ Iowa cites cases from district courts in New York, which have directed class members to send consent forms to the applicable Clerk of Court.  There is currently no such practice in Iowa, and this Court will not attempt to create it here.  Plaintiffs' chosen counsel will be charged with filing Consent Forms submitted to them with the Court.

Concerning the timing of the notice process, PJ Iowa requests that this Court set an opt-in period of 45 days.  In the related Tegtmeier case, this Court reasoned that "60 days is sufficient time to notify putative class members and allow them to decide whether to opt-in."  Tegtmeier, 208 F. Supp. 3d at 1025 (quoting Simmons v. Valspar Corp., Civ. No. 10-3026 (RHK/SER), 2011 WL 1363988, at *5 (D. Minn. Apr. 11, 2011)).  The Court sees no reason to deviate from that time frame.

Finally, regarding the limitations period, the Court will toll the statute of limitations from the date the motion for conditional certification was filed on March 16, 2018, until the date the opt-in period begins to run in order to account for court delay.  See Vinsant v. MyExperian, Inc., No. 2:18-CV-02056, 2018 WL 3313023, at *5 (W.D. Ark. July 5, 2018).  Generally, FLSA claims have a two-year statute of limitations.  29 U.S.C. § 255(a).  Where there has been a willful violation by an employer, there is a three-year statute of limitations; however, whether "violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants."  Resendiz-Ramirez v. P & H Forestry, LLC, 515

F. Supp. 2d 937, 942 (W.D. Ark. 2007).  "The facts concerning willfulness must be elicited during discovery, and Defendants may challenge the three-year statute of limitations again at an appropriate time." Id. at 42-43.  Notice will go to all individuals who were employed by PJ Iowa during the three-year period immediately preceding the filing of the Motion at issue here.  Once discovery is complete, if it is determined that PJ Iowa's violations were not willful, then the two-year statute of limitations will apply, and "the claims of similarly situated workers falling outside the two-year statute of limitations will be time-barred." Id.  Accordingly, the notice shall explain clearly that claims of employees who have not worked for Defendant within the past two years may be time-barred and, if so, no recovery will be available.

## III.   CONCLUSION

For the reasons provided above:

1. Plaintiffs' Motion, ECF No. 42, is **granted in part and denied in part**. Plaintiffs' motion is **granted** as to conditional certification of the FLSA collective action claims asserted in Counts I and III, but **denied** as to Rule 23 certification of IMWL and IWPCL class action claim asserted in Count II.

2. Notice of pendency of the collective action shall be sent to all individuals who worked for PJ Iowa as a delivery driver between March 16, 2015, and the present time.

3. The Notice and Consent Form, as set forth in exhibits to the Motion are **approved**, with the exception of the changes ordered above.

4. Plaintiffs' counsel shall have **10 days** from receipt of the information listed above to circulate the Notice and Consent Form via U.S. Mail.

5. Putative opt-in plaintiffs shall have **60 days** from the circulation of the Notice and Consent Form to opt in to this action.

6,   The statute of limitations will be equitably tolled for potential opt-in plaintiffs

from March 16, 2018, until the 60-day opt-in period begins to run.

**IT IS SO ORDERED.**

Dated this 9th day of October, 2018.

JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT